Barrett S. Litt, SBN 45527
Lindsay Battles, SBN 262862
Email: lbattles@kmbllaw.com
Kaye, McLane, Bednarski & Litt
975 East Green Street
Pasadena, California 91106
Phone: (626) 844-7660
Facsimile: (626) 844-7670

Attorneys for Plaintiffs
(Other counsel not listed)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY AMADOR, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF LOS ANGELES, *et al.*, <br><br> Defendants. | Case No. CV 10-01649 SVW (JEMx) <br><br> [Honorable Stephen V. Wilson] <br><br> **DECLARATION OF CAROL A. SOBEL IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** <br><br> Date:      July 20, 2020 <br> Time:     1:30 p.m. <br> Crtm:    10A |

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California.  I make this declaration from facts of which I have personal knowledge and, if called to testify to those facts, could and would do so competently.

2.       I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered  private  practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit "1" is my resumé.

3.       I have received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in  California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade.  Additional recognition of my legal work is set out in my attached resumé.

4.       For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party. Because the ACLU does not bill clients on an hourly basis for its services, I was

2

required to obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City.  I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.    Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates.  I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees.  As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.    To obtain information concerning market rates charged by attorneys in the Los Angeles area, I also review attorney fee applications and awards in other cases than my own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles.  I do this to determine what is being sought and approved as market rates for lawyers from these firms.  Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

7.    In addition to these two methods, when I become aware of a case

3

where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.   Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.      To obtain information concerning market rates charged by attorneys in the Los Angeles area, I also review attorney fee applications and awards in other cases than my own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles.  I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well. In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.   Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually for more than 30 years.

9.      My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of

reasonable market rates in Los Angeles.  For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964 (C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012).  The Ninth Circuit recently cited to my declaration in approving EAJA rates for the ACLU and other immigration attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018).  In *Jochimsen*, a unanimous court held

5

that I was qualified as an expert on reasonable market rates.

10.    In addition, I litigated statutory fee issues at the appellate level in several of my cases.  Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts and upholding an award of fees of almost $2 million in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department.  I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Circuit Court's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

11.    I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California.  I also do CLE presentations on attorney fees for a number of organizations, including the National Lawyers Guild and the National Police Accountability Project.

12.    I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours.  Many of the cases in which I am counsel involve multiple attorneys and law offices.  In those instances, I am the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any improperly billed time.  This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items.  For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and

6

Litt & Estuar.  The unadorned lodestar in *Tipton* was approximately $1,900,000.  I performed similar services in other cases where multiple counsel are involved.

13.    In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case.   Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable.  The fee approved in the case was $3,713,000.

14.    Because I am a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did during the time that I was employed by the ACLU.  When I was at the ACLU, I prepared numerous fee motions under federal and state fee-shifting statutes for cases in which the ACLU represented the prevailing party.  I was responsible for preparing these motions both for cases where I was directly involved in the underlying litigation, as well as in cases brought by other staff attorneys and volunteer counsel for the ACLU.  As part of this assignment, each year I would survey several law firms to obtain information on their current billing rates to establish rates for individuals of comparable experience to ACLU staff.  I chose firms where the partners were familiar with the experience levels of the various ACLU attorneys and had co-counseled cases with the ACLU.  I have continued a similar practice with fee motions in those cases where I serve as ACLU cooperating counsel and in my own practice when fees may be recovered.

15.    Since entering private practice, to keep current with market rates, I review billing rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees.  I make it a point to obtain rate

7

information for attorneys in both larger law firms engaged in similarly complex federal litigation, as well as smaller boutique civil rights law firms and public interest organizations.  I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center, Disability Rights Advocates and other public interest groups to determine what is being sought and awarded as market rates.  Although I frequently file declarations in support of fee applications filed by these non-profit groups, I am usually not the only declarant.

16.    In all the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons."  *Id.* at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful.  *See, Nadarajah v Holder,* 569 F3d at 910.

17.    To support my opinion here, I attach fee awards and supporting declarations in civil rights cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files, with the state Superior Court's stamp or the federal ECF header. Several are now several years old. These older exhibits illustrate the reasonableness of the rates but do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar

8

rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).  If I rely on decisions more than two years old, I compute a current rate by using a 3.1 percent increase, which is the average of the legal services component increase in the Consumer Price Index for Los Angeles for the past several years. The data is available at http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category).

18.    I apply several additional principles to establish reasonable market rates.  First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates.  I look to rates awarded to the attorney in previous cases based on my understanding that such awards are strong evidence of reasonable rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008).

19.    Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill clients on an hourly basis.  *See Blum*, 465 U.S. at 895.  This approach recognizes that most civil rights attorneys, including at non-profits, take cases on a contingency basis.  I look broadly at awards stablishing reasonable hourly rates in a variety of civil rights cases based on my understanding that the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)  (internal quotation omitted).

20.    When the specific rate evidence identified in the preceding paragraph

9

is available, I do not rely on surveys because they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the attorneys included in the survey and often no indication of the relevant legal market. *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates). Similarly, I do not apply the rates billed by and paid to opposing counsel who are salaried, contract government attorneys, or retained insurance defense because they generally charge rates well below market and are paid win or lose, so they do not share the risk taken by lawyers who depend upon fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (because government lawyers and retained insurance defense attorneys generally bill at lower rates, they do not reflect the same legal market).

21.    I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

22.    I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in the course of a year. I look at court orders in the past year awarding statutory fees or awarding fees as a discovery sanction. I subscribe to several websites that report legal news. If I learn of a case where there is likely to have been a fee motion, I obtain a copy of the motion, supporting declarations and any subsequent fee award from public sources, including the on-line document services for the Los Angeles Superior Court website and PACER.

23.    In all the fee declarations that I prepare, I apply my understanding of

the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 and fn. 11 ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"). I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

24.    I apply several other principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand such awards are strong evidence of reasonable rates. Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

25.    I also look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill clients on an hourly basis. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases).

26.    Finally, in my experience, billing rates in Los Angeles have increased annually at more than the cost-of-living rate. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30,

11

2012), Judge Carter rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

27.    I have not set my rate for 2020.  The rate I applied to fee motions and negotiations in 2019 was $1,000 an hour.  In May 2019, this was the rate used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). Over the last few years, I have resolved attorney fees in several matters applying rates of $900 an hour up to $975.  The last court-awarded fee I received was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). The rate of $1,000 an hour represents an increase of slightly less than three percent annually from my last court-approved rate in *CPR for Skid Row*.

28.    The table attached to my Declaration as Exhibit 2 sets out the summary of the rates I considered for the attorneys seeking fees by this motion.

**LITT FIRMS:**
**BARRETT S. LITT**

29.    Mr. Litt seeks a rate of $1200 an hour in this matter.  In my experience and opinion, Mr. Litt is one of the most skilled civil rights and class action litigators in the nation.  Based on my interactions with civil rights attorneys throughout the country, I believe my opinion of his reputation is widely shared.

30.     I have known Mr. Litt for approximately 46 years and co-counseled cases with him repeatedly over that time period after I was admitted to practice law in 1978.  These include several of the cases listed above, including *Tipton-Whittingham v. City of Los Angeles*, *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, CV 07-7032 AHM, 2009 U.S. Dist. LEXIS 132270 (C.D. Cal. 6/24/09), and, currently *Chua v. City of Los Angeles,* Case No. 16-cv-00237 JAK GJS (C.D. Cal.)        .

31.     Mr. Litt seeks a rate of $1200 an hour for 2020 (which I am advised is the year being used for all counsel for rates because the fee motion will be ruled on in the second half of 2020).  The rate of $1200 an hour is at the lower end of the legal market for an attorney of Mr. Litt's skill, experience and reputation.  To support my opinion, I submit six recent fee application and fee awards setting rates at approximately the same rate for attorneys with far less experience than Mr. Litt in both civil rights and private commercial firms.

32.     In *Nozzi v. Housing Authority of the City of Los Angeles,* Case No. 2:07-cv-00380-PA-FFM) (C.D. Cal. 2018), the Court approved the class fee on a lodestar cross-check.  Because the Court's Order did list the approved rates, I reviewed the Declaration of Barrett S. Litt in Support of Plaintiffs' Motion for Final Approval of Settlement for specific rates. [Doc. 323].  In *Nozzi*, Mr. Litt's 2017 rate was $1,150, just $50 below the rate he requests three billing years later.

33.     Attached at Exhibit 3 is the Declaration of Gerald Knapton filed in *Skeen v. BMW North America*,  2016 U.S. Dist. LEXIS 97188, Civ. No. 2:13-cv-1531-WHW-CLW (D.C. NJ 2016), a class-action product defect case in which Paul Keisel and Ray Boucher were counsel, both well-known attorneys in Los Angeles.  In *Skeen*, Mr. Kiesel sought a 2016 rate of $1100 an hour and Mr.

13

Boucher, identified in the Knapton declaration as a 1984 law graduate, requested $925 for the early part of the litigation and $1100 for work done in 2016. I know Mr. Kiesel and co-counseled a case with him when I was at the ACLU in the early 1990s. Mr. Knapton attested that the rates for Mssrs. Kiesel and Boucher were reasonable in the Los Angeles market, especially for class actions, and consistent with past rates approved for both. Ex. 3, ¶¶ 32,34. I reviewed the PACER file in *Skeen* and am aware that the judge determined that the rates were somewhat high for New Jersey; however, the Court reached the same rate of compensation by applying a multiplier to a slightly lower rate. The Court used the unadjusted 2015 Real Rate Report of $848 for partners with 21 years of experience, which was the approximate amount of experience Mssrs. Kiesel and Boucher had at the time. *Skeen v. BMW*, 2016 U.S. Dist. LEXIS 97188, *71-72 and n.6 (D NJ 2016). I note that each attorney had less than half the experience Mr. Litt has now.

34.    Mr. Kiesel was awarded fees at the rate of $1100 an hour in 2015 in the Central District, when he had just 30 years of experience. Attached at Exhibit 4 is the Declaration of Matthew Young, setting out the rates for the Kiesel firm in *Stone v. Howard Johnson, International, Inc.*, Case No. 12-cv-01684 PSG (MANx) (CD CA 2015). The rate for Mr. Kiesel is set out in Exhibit 3 to the Young declaration. The Court's Order approving final settlement, including the attorneys' fees, was entered at Docket # 123.

35.    Attached at Exhibit 5 is the Notice of Ruling in *Hadsell v. City of Baldwin Park*, Los Angeles Superior Court Case No. BC548602 (2019). I reviewed the Court's Minute Order on the motion for attorneys' fees. The Court approved rates of $1100 an hour for attorneys Dordick and Shegarian. *Id.*, p. 2. Based on a review of their respective websites and the State Bar website, I believe Mr. Dordick is a 1987 admittee and Mr. Shergarian is a 1990 admittee, with    18

14

years and 21 years less experience, respectively, than Mr. Litt.

36. Attached at Exhibit 6 is a true and correct copy of the Minute Order by Judge Michael Linfield in *Dr. Lauren Pinter-Brown v. University of California at Los Angeles*, LASC Case No. BC624838 (Aug. 2018). I downloaded the document from the Los Angeles Superior Court's online services on December 12, 2019, when I became aware of the ruling. Chart No. 1 to the Minute Order sets out the approved rates for each attorney at Shergerian and Associates for whom fees were sought. Mr. Shegerian's approved 2018 rate is $1,100 an hour.

37. Attached at Exhibit 7 is the Order approving attorney fees in *Schroeder v. County of San Bernardino*, Case No. ED CV 18-427 DMG (JCx). In *Schroeder*, Judge Gee approved the 2019 rate of $950 an hour for Dale Galipo based on the Court's conclusion that Mr. Galipo had 28 years of experience at the time. The Court noted that Mr. Galipo graduated from law school in 1984 but listed no significant experience on his resumė prior to 1991. Ex. 7, p.5.

38. As further support for Mr. Litt's requested rate, I submit the Declaration of Hannah Cannom, setting out rates for attorneys at Milbank Tweed Hadley & McCloy LLP in 2014. The firm served as pro bono counsel with the Disability Rights Legal Center in Los Angeles in a class-action Special Education case. The Plaintiffs' attorneys filed a motion for attorney fees after prevailing on appeal in the Ninth Circuit. *LAUSD v. Garcia*, Case: 10-55879 (9th Cir. 2014).

39. In support of the motion, Hannah Cannom, then an associate at Milbank Tweed, filed a declaration setting out the rates for the firm's attorneys. A true and correct copy of the Cannom declaration is attached at Exhibit 8. Ms. Cannom attested that the 2014 rate for Daniel Perry, a 1999 law graduate and a partner at the firm, was $1,135 an hour. At the time, Mr. Perry had only 15 years of experience, less than one-third of the experience Mr. Litt has now. Ex. 8, ¶ 7.

**LINDSAY BATTLES**

40.     Plaintiffs request a rate of $700 an hour for Lindsay Battles, now with 10 years of experience.  It is my understanding based on discussions with Mr. Litt that Ms. Battles carried the laboring oar on this case and seeks a rate at the higher end of the range of market rates for an attorney of her skill, experience and reputation.  In my opinion, Ms. Battles' requested rate is comparable to those of similarly skilled attorneys in the Los Angeles legal market.

41.     In *LAUSD v. Garcia*, fees were sought for Delilah Vinzon, then practicing for approximately 11 years, at the 2014 rate of $900 an hour. Ex. 8, ¶ 8. Ms. Cannom also attested in her declaration that her 2014 customary billing rate as an eighth-year associate was $800 an hour.  *Id.*, ¶ 6.  I am familiar with Ms. Cannom and am aware that she is a 2006 law graduate  *Id., ¶* 2.

42.     Ms. Battles' rate is also reasonable when compared to the 2018 rate of $675 an hour approved for Anthony Nguyen in Exhibit 6.  Ex. 6, Chart 1.  Based on my review of the State Bar website, I understand Mr. Nguyen is a 2009 admittee.  In 2018, he had three years less experience than Ms. Battles has now and was approved at a rate barely three percent below the rate she now requests.  I also note that in 2019, in *Hadsell,* the Court approved the rate of $800 an hour for Mr. Nguyen, an increase of almost 20 percent in one year.  Ex. 5, p. 2.

43.     As one final example of the reasonableness of Ms. Battles' requested rate, in *The Estate of Pream v. City of Long Beach*, Case NO. 17-cv-04295 TJH (FFMx), Plaintiffs requested 2019 rate for Rodney Diggs.   A true and correct copy of the motion for attorney fees is attached at Exhibit 9.  Mr. Diggs is identified in the motion as a 2010 law graduate.  Ex. 9, p.13.  His requested rate is at p.12, l. 22. It is my understanding, based on discussions with counsel in the case and my review of the PACER docket, that the case settled prior to a ruling on the motion.

16

**MARTIN LITJMAER**

44.     Plaintiffs request a rate of $600 an hour for Martin Lijtmaer.  I am personally familiar with Mr. Litjmaer and am aware that his primary experience is as a criminal defense attorney.  Mr. Lijtmaer is a 2008 law graduate.

45.     The rate of $600 for Mr. Lijtmaer is also reasonable when compared to the rate approved for attorneys in *Sheik Moinuddin v. State of California Dept. of Transportation*, LASC Case No. BC656161 (Aug. 13, 2019), an employment discrimination case.  There the Court approved the rate of $550 an hour for attorney Brandon Ruiz and $525 an hour for Sereena Singh.  Ex. 10, p.4.  Based on my preparation of a supporting fee declaration in *Moinuddin* and my review of the State Bar website, I understand that Mr. Ruiz is a 2009 law graduate and Ms. Singh is a 2011 law graduate.  Mr. Ruiz has two years and Ms. Singh four years less experience than Mr. Lijtmaer has now.

**PAUL ESTUAR**

46.     Mr. Estuar seeks a rate of $800 an hour with 27 years of experience.  I believe this is a reasonable rate in the Los Angeles legal market.   In *Moinuddin*, the Court approved attorney fees at the 2019 rate of $850 an hour for attorney Rob Hennig.  Ex. 10, p.4.  I know Mr. Hennig personally.  He was a board member of the ACLU while I worked there and both prior to and after he attended law school.  Based on personal knowledge, I believe Mr. Hennig is a 1994 law graduate.  In 2019, he had two years less experience than Mr. Estuar has now.

47.     Attached at Exhibit 11 is the order of the United States District Court in  *Trevor Woods, et al. v. Officer John Fagan, et al.*, Case No. CV14-08374 VAP (Spx) (C.D. CA 2016), issued by the Honorable Virginia A. Phillips, Chief United States District Judge for the Central District of California.  In *Woods*, the Court determined that a reasonable 2016 hourly rate for attorney Brian Dunn, managing

attorney at The Cochran Law Firm, was $750.00 per hour. I am personally familiar with Mr. Dunn. I provided a supporting declaration for his fee motion in *Fagan*. I am aware that Mr. Dunn, like Mr. Estuar, is a 1993 law graduate.

48. More recently, I provided a supporting fee declaration for Mr. Dunn and other attorneys in *Pream*, Case 2:17-cv-04295-TJH-FFM (C.D. CA April 12, 2019) [Doc. 136-2]. Ex. 9. In *Pream,* Mr. Dunn requested an hourly 2019 rate of $850 an hour. It is my understanding, based on a review of the Court's docket and discussions with one of the attorneys in the case, that the case settled, including all fees, prior to any decision by the Court on the rates.

**STACEY BROWN**

49. Plaintiffs request a rate of $700 an hour for Stacey Brown, a 2006 law graduate now with 14 years of experience. Based on the evidence submitted in support of the requested rates for Lindsay Battles and Martin Lijtmaer, both 2008 law graduates, the rate sought for Ms. Brown is well within the reasonable market range for an attorney with her skill and experience.

**COOK, ANDERSON-BARKER, FLYNN FIRMS**
**DONALD COOK**

50. Plaintiffs seek a rate of $925 an hour for attorney Donald W. Cook. I know Mr. Cook personally. We participate on the National Police Accountability Project list serve and have both presented at the same CLEs on police misconduct issues. In my experience, Mr. Cook is one of the most skilled practitioners in this area of law. His work has produced numerous precedential decisions that I and others rely on for our cases. In my opinion, he is widely viewed as highly skilled and experienced. The rate of $925 an hour is well within the range of market rates for comparably skilled attorneys in the Central District.

51.    Attached at Exhibit 12 is the Order awarding attorney fees as part of the approval of the class settlement in *McKibben v. McMahon*, 2019 WL 1109683, Case No. EDCV 14-2171 JGB (Spx) (C.D. CA Feb. 28, 2019).   Based on my review of the Court's docket, I am aware that the motion for attorney fees was filed in 2018.  In *McKibben*, the Court approved the 2018 rate of $875 an hour for David McLane.  Ex. 12, *14.   I know Mr. McLane personally and am aware that he graduated from UCLA in 1986.  Mr. Cook has four more years of experience now.  The difference in their rates over four years is $50, little more than one percent or approximately $12 an hour per year. (I also note that, in that case, Judge Bernal found Mr. Litt's rate of $1150 reasonable.)

52.    In Exhibits 4, the 2015 rate approved for Paul Kiesel was $1100 an hour.  Ex. 4, p. 7.  Donald Cook and Paul Kiesel both graduated from law school in 1984.  Mr. Cook has five more years of experience than Mr. Kiesel had in 2015.

53.    Attached at Exhibit 13 is the decision in *Garza v. City of Los Angeles*, 2018 WL 5859549, Case No. 2:16-cv-03579-SVW-AFM (CD Cal. 2018), awarding fees to civil rights attorney V. James DeSimone at the 2018 rate of $875 an hour.  I know Mr. DeSimone since approximately 1988, when he contacted the ACLU to ask for assistance on his first appellate argument.  Based on my personal interactions with Mr. DeSimone, I believe that he is a 1985 law graduate.  His approved 2018 rate is only $50 below the 2020 rate now requested for Mr. Cook.

**ROBERT MANN**

54.    Plaintiffs request $975 an hour for attorney Robert Mann.  It is my understanding that Plaintiffs seek a somewhat lower rate for Mr. Mann, a 1971 law graduate, based on his retirement and, therefore, have calculated his rate based on only 45 years of experience. Mr. Mann was a UCLA classmate of a lawyer at the

19

ACLU when I began working there, which is when I first met him. He is highly skilled and experienced as a civil rights lawyer. The rate he seeks is supported by the approved rates cited to support Mr. Cook's requested rate.

**SAMANTHA KOERNER**

55. Plaintiffs request $700 an hour for Samantha Koerner. I know Ms. Koerner personally and, on that basis, understand that she is a 1994 law graduate. While this rate is at the low end of the market range for an attorney with 26 years of experience, it is my understanding that Ms. Koerner's experience is concentrated on motion writing, rather than the broader case strategy and lead counsel role. Ms. Koerner's requested rate is supported by the evidence supporting the rates for Lindsay Battles and Stacey Brown.

**CYNTHIA ANDERSON-BARKER**

56. Plaintiffs request $775 an hour for attorney Cynthia Anderson-Barker. I have co-counseled several cases with Ms. Anderson-Barker, including *Santiago v. City of Los Angeles*, Case No. CV 15-8444-BRO(Ex) (CD Cal.) and *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM (CD Cal.). It is my understanding that she is a 1995 admittee. In my experience, she is a highly skilled and experienced attorney who litigated complex civil rights cases, particularly in the area of police misconduct issues. The rate of $775 an hour is at the lower end of the market range for an attorney of her skill and experience.

57. In *Moinuddin*, the Court approved attorney fees at the 2019 rate of $850 an hour for attorney Rob Hennig, a 1994 law graduate. Ex. 10, p.4.

58. In *Trevor Woods*, the Court approved a 2016 hourly rate for attorney Brian Dunn at $750 an hour. Ex. 11. As noted above, Mr. Dunn is a 1993 law graduate. In *Pream*, Mr. Dunn's 2019 hourly rate was $850 an hour. Ex. 9.

59.     In *Nozzi*, the lodestar cross-check applied a 2017 rate of $750 an hour for attorney Patrick Dunlevy, identified as a 1992 law graduate. *See* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, p. 4].  Also in *Nozzi*, Hernán Vera, formerly the Executive Director of Public Counsel and identified as a 1994 law graduate, was calculated at the 2017 rate of $765 an hour, just $10 an hour below the 2020 rate requested for Ms. Anderson-Barker.

**COLLEEN FLYNN**

60.     Plaintiffs request compensation for attorney Colleen Flynn at the rate of $740 an hour.  I know Ms. Flynn well and have known her since she was a law student.  On that basis, I am aware that she is a 2004 law graduate.  Over the course of the last 15 years, I have co-counseled several cases with her, including, among others, the *MIWON* case.  Currently, Ms. Flynn is one of my co-counsel in *Chua v. City of Los Angeles*, 2:16-cv-00237 JAK GJS (CD Cal), a class-action First Amendment protest mass arrest case; and in *Rivera Martinez v. The Geo Group,* Case No. 5:18-cv-01125 SP (CD Cal), a civil rights lawsuit on behalf of former detainees at the Adelanto ICE detention facility.

61.     In 2019 in *Chua*, the plaintiffs filed a motion for approval of attorney fees in which they request a rate of $725 a hour for Ms. Flynn.  The rate of $740 an hour is a modest $15 increase on her 2019 rate.

62.     Ms. Flynn's requested rate is also supported by the 2019 rate of $700 an hour for Mr. Diggs, a 2010 law graduate, in *Pream*. Ex. 9.  It also reasonable when measured against the rate of $730 an hour in *Nozzi* for Stephanie Carroll, identified as a 2004 law graduate. *See* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, p. 5].

**SUPPORT STAFF**

21

63.     Plaintiffs also seek compensation for support staff at rates ranging from $360 an hour for Senior Paralegals, $225 for Experienced Paralegals, $175 an hour for Paralegals, $125 an hour for Junior Paralegals, and $225 for Law Clerks. Plaintiffs are entitled to compensation for paralegals and law clerks at market rate. *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989).  In my experience, the practice in the Central District is to bill private clients for paralegal and law clerk services.  I base my opinion on my review of multiple fee declarations and applications filed by pro bono counsel in public interest and civil rights cases.

64.     For example, in 2014, Milbank Tweed billed a paralegal with 8 years of experience at $230 an hour.   Ex. 8, ¶12.  I note the paralegal had a juris doctor in addition to a Bachelor of Arts, but was not admitted to practice law.

65.     In *Nozzi*, the fees included billing for paralegals at 2017 rates ranging from $335 an hour to $150 an hour and $200 an hour for law clerks. *Nozzi,* Case 2:07-cv-00380-PA-FFM (CD Cal. 12/22/17) [Doc. 323, pp. 4-5].  In *McKibben*, paralegal compensation was approved at an average rate of $235 an hour.  Ex. 12, *14.  In *Moinuddin*, paralegals were approved at $165 an hour.  Ex. 10, p. 4.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of February 2020 at Santa Monica, California.

CAROL A. SOBEL